Thacher, J.
I am not satisfied that the justice had authority to direct this warrant to a private person. Doubting of his power, I cannot say that the warrant was legal. And unless I am convinced that it was, I am bound to declare that judgment ought not to be rendered upon the verdict.
Sewall, J.
The office of justice of the peace was introduced by our forefathers at their migration; and in all particulars, then applicable, or which have since become applicable, to this jurisdiction, may be considered as possessing, here; the general character and functions allowed to it in England, by force of the statutes which had there created and regulated this ancient and important office. After its introduction, the office became of course a subject of legislation here, and at an early period subsequent to the charter of William and Mary, the form of an oath to be administered to justices of the peace was appointed, (a) By this form of oath, a justice of the peace was required to engage * himself “ not to direct his warrant to the parties, but [ * 490 ] that he would direct his warrant to a sheriff, under-sheriff or deputy, constable, tithing-man, or other officer, proper for the execution of the same within the county.” Until the establishment of the present constitution of government, justices of the peace were sworn according to the tenor of this oath ; and it must be considered, I think, that by a plain implication from it, if not by the very terms of it, they were restrained from issuing their warrants to private persons; from which regulation, however, some special cases, afterwards designated by other statutes, must be understood to be exceptions. The constitution abolished this form of oath by directing a general form for all civil officers; (b) but this abolition can hardly be construed to confer upon this office any authorities, or to restore any modes of process, which, for so long a time before, had been denied and disused. The statutes which, since the present constitution, have been enacted on this subject, have enumerated very particularly the powers and duties of justices of the peace, both in civil and criminal matters. And this enumeration is so complete as to leave very little, if any, occasion of recurring to the ancient English statutes, for the powers of this office; and perhaps *366 the enumeration itself may be construed to preclude such recurrence for the purpose of inferring any power not enumerated. We may consider the office therefore as existing with us at this time, principally, if not entirely, according to the authorities and duties provided by those statutes enacted with us. And by recurring to them, the sense of the legislature, upon this subject, may be collected with some tolerable satisfaction, if not conclusively. The warrant in question was issued upon a complaint in a criminal matter, [ * 491 ] and may be supposed, * in the purpose of it, pursuant to the authority which justices of the peace have by the act vesting in them certain powers in criminal cases, (a) By this statute sheriffs, constables and other officers are directed,and empowered to serve any warrant issuing from a justice of the peace, and justices of the peace have authority to command, for the preservation of the peace, the assistance of those officers, and of other persons present at any affray, riot, &c. The silence of the legislature as to any authority of private persons to whom warrants may be directed, as well as the direction respecting private persons who may be present at any affray, &c., affords a strong implication, that in the apprehension and intention of the legislature, no private person not an officer had or ought to have any other authority than is there described, either under the warrant or the command of a justice of the peace. This implication is considerably strengthened, in my opinion, by the tenor of a more recent statute on the subject of aid to civil officers in criminal cases. (b) By this act any person, not a sheriff, deputy-sheriff or constable, who shall pretend himself to be either, and shall require any aid as such in any matter appertaining to those offices, is subjected to a heavy fine. And by the same statute, a justice of the peace, for the preservation of the peace, or upon view of any breach thereof, has authority, “'in the absence of the sheriff\ deputy-sheriff or.constable,” to require the aid of private persons, it is difficult to conceive that an authority understood by the legislature to exist at all times and upon all occasions, should be restrained on a pressing occasion, to be employed only in the absence of the civil officers mentioned ; and that in describing the offence of requiring aid, not being an officer, there should be no provision [ * 492 J for the case of a private person * authorized to act by a warrant of a justice of the peace. Arguments of this kind might be multiplied, for the purpose of showing an implied negative of the legislature upon the mode of process now contended for in support of the warrant drawn in question in this case. The *367 special provisions which have been made in certain cases, as in the instance of warrants for the removal of paupers, where the legislature have authorized the direction of warrants to private persons, might be cited on this occasion. But perhaps sufficient has been said to show, first, the denial and disuse, with us, of this mode of process, and secondly the implied negative of the legislature respecting it. It may be further observed that if now admitted and received, it must be taken, destitute as it is, of any aid or regulations, or any provisions by the statutes enacted here for the direction and security of all persons who may be legally employed in preserving the public peace, and in performing the duties of civil officers. Upon the whole I conclude against the regularity of the warrant in question, and against the authority of Philip Weaver, the supposed officer named in this indictment; and I am therefore for setting aside the verdict against the defendants taken subject to the opinion of the Court upon this question.
Sedgwick, J.
Two of the defendants in this case, Samuci
Foster and David Page, have been tried and convicted, subject to the opinion of the Court upon this question—whether the warrant on which Richard Foster was arrested for the breach of the peace, was a lawful authority to Philip Weaver to arrest and detain the sai.d Richard Foster. The warrant was directed to the sheriff, his deputy, the constable of the town, “ and to Philip Weaver.” On the part of the defendants, it is said that the words which constitute a part of the oath of a justice of the peace as prescribed by the act 4 W. & M. * c. 17, viz., “ And you shall not [ * 493 ] direct, or cause to be directed, any warrant (by you to be made) to the parties, but you shall direct your warrant to the sheriff, his under-sheriff or deputy, constable, tithing-man, or other officers, proper for the execution of the same within the county,” that these words express a legislative opinion that in no case, as I understand the counsel, is a warrant of a justice of the peace to be directed to a private person ; and that although under the present form of government another form of oath is established, yet that the legislature having expressed this opinion, and having never since made any contrary declaration, it must still be considered as evidence of what the law is, on this subject. I am inclined to believe that the words which are relied upon are, in substance at least, taken from the form of oath, which is in England administered to justices of the peace; (a) and there undoubtedly, under certain circumstances, *368 it has always been deemed legal, and so has been the constant practice, for justices to direct their warrants to prhate persons. It is not necessary, in this case, to determine the meaning of those words and their legal effect to the extent contended for. Thus far I feel satisfied to go, and think it of importance for the security of individuals to be established, that in no case but where it shall be necessary, and that necessity expressed in the warrant, ought the warrant of a justice of the peace to be directed to a private person. The law has provided, on the one hand, for the apprehension of offenders and those charged with crimes for trial; and on the other [ * 494 ] hand, it ought to guard against oppression and * unnecessary vexation. Any person may arrest in cases of treason and felony, and officers, in many instances, on view, to preserve the peace and to prevent outrage. But in cases where arrests are not authorized without warrant, the law has provided its corps of officers, directed how they shall be appointed, prescribed the limits of their powers and duties, in some instances exacted bonds, and in all imposed oaiths for their fidelity and good conduct. Does it consist with that anxious regard for personal liberty and to prevent vexatious oppression, which all governments ought to feel, and this I hope does feel, that it should be permitted to the most ordinary magistrates, for no reason but because it is their pleasure, and whether their pleasure be the result of inconsideration, wantonness, or malice ? Is it consistent with personal security to permit them to employ in the execution of their warrants, any individual, whom they shall elect, in any instance but where necessity shall require it ? In this case it is not said—it is not pretended that there was ahy deficiency of the public officers ; no reason is alleged why they could not execute the warrant as well as Philip Weaver. Why then was the warrant directed to him ? and why was the service attempted by him ?
This reasoning seems to be fortified by the 3d sect, of the act of the 26th of Feb. 1796, (stat. 1795, c. 68,) to enable sheriffs, &c., to require aid in the execution of their respective offices in criminal cases. It says “ that any justice of the peace, for the preservation thereof, or upon view of the breach thereof, or upon view of any other transgression proper to his cognizance, done or committed by any person or persons whatever, shall have authority (in the absence of the sheriff, deputy-sheriff, or constable,) to require any person or persons to apprehend and bring before him such of- [ * 495 ] fender or offenders.” Here a justice may not even * for the preservation of the peace, or to secure offenders who have broken it, in his view, which cases are obviously much more urgent than that of apprehending an offender for a breach of *369 the peace which is past, as was the case with this warrant; even in these instances of urgency, a justice of the peace may not authorize a private person to arrest, but in cases of necessity—“ in the absence of the sheriff, deputy-sheriff, or constable.” While this authority is so expressly withholden from a justice of the peace in these instances, would it not be extraordinary, and even absurd, to say he may, by law, exercise the power, according to his will, and without any pretence of necessity, in such cases as that now under consideration ? I think it would.

Judgment for the defendant.

 4 W. & M. c. 17. O. Pro. L. Brook, p. 25.

6) Const. ch. 6, art. 1.

а) Act March 16,1784, (stat. 1783, c. 51, § 1.)

б) Act 26th Feb. 1796, (stat. 1795, c. 68.)

 In Burn's Justice, it is said that the form of their oath of office, at this day, (so far as it relates to this point,) is—“ And ye shall not direct, noy cause to be directed, any warrant (by you to he made) to the parties, but ye shall direct them to the bailiffs of the said county, or other the king’s officers or ministers, or other indifferent persons to do execution thereof.’’